DECISON ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} This original action is a challenge to the decision of respondent, State Employment Relations Board ("SERB"), to dismiss an unfair labor practice charge against the Geauga County Commissioners for lack of subject matter jurisdiction. Relator is the Ohio Patrolmen's Benevolent Association ("OPBA"). OPBA filed this action seeking an order from this court requiring SERB to exercise its jurisdiction and to issue a complaint and conduct a hearing on OPBA's unfair labor practice charge against the Geauga County Commissioners.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. (Attached as Appendix A.) On March 29, 2004, the magistrate concluded that the Geauga County Commissioners were an indispensable party pursuant to Civ.R. 19. Therefore, the magistrate recommended dismissing the action without prejudice.
 {¶ 3} OPBA filed an objection to the magistrate's decision arguing that the Geauga County Commissioners would not be unfairly prejudiced by the issuance of the requested writ. OPBA contends that if the requested writ is granted, the Geauga County Commissioners will be given ample opportunity and due process protections in a proceeding before SERB on the unfair labor practice charge. OPBA also argues that a dismissal now, would be detrimental to relator as the matter is ripe for decision on the merits, and a dismissal would lead to further delay and expenditure of resources. We disagree.
 {¶ 4} The Geauga County Commissioners have been deprived of an opportunity to appear and be heard as parties in this action. If this court were to decide this action in mandamus in relator's favor, the Geauga County Commissioners would be required to appear and defend themselves against the unfair labor practice charge before SERB. Having prevailed before SERB, they have a strong interest in appearing and opposing OPBA's challenge in the present action.
 {¶ 5} Following independent review, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the action is dismissed without
prejudice.
Objections overruled; action dismissed without prejudice.
Bryant and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Ohio : Patrolmen's Benevolent Association, : Relator, : v. : No. 03AP-1037 State Employment Relations Board, : (REGULAR CALENDAR) Respondent. :
 MAGISTRATE'S DECISION Rendered on March 29, 2004 Climaco, Lefkowitz, Peca, Wilcox Garofoli Co., L.P.A., andJoseph M. Hegedus, for relator.
Jim Petro, Attorney General, and Michael D. Allen, for respondent.
 IN MANDAMUS {¶ 6} In this original action, relator, the Ohio Patrolmen's Benevolent Association ("the Union"), seeks a writ compelling respondent, State Employment Relations Board ("SERB"), to vacate its decision finding that it had no jurisdiction over the County Commissioners of Geauga County ("County Commissioners") under R.C. Chapter 4117, and to proceed to adjudicate the Union's charge against the County Commissioners on its merits.
Findings of Fact:
 {¶ 7} 1. The Sheriff of Geauga County ("County Sheriff") employs various public employees pursuant to R.C. Chapter 4117, and these employees are represented by the Union as their exclusive bargaining representative.
 {¶ 8} 2. In 2001, the County Sheriff engaged in contract negotiations with the Union regarding the terms of employment for these employees. After impasse was reached, the parties followed the dispute resolution procedures mandated in R.C. Chapter 4117, and the County Sheriff ultimately entered a collective bargaining agreement in September 2001 pursuant to binding arbitration. The agreement was in effect from January 1, 2001 through December 31, 2003.3. Article 35 of the collective bargaining agreement provides as follows, in pertinent part:
Section 1. The Employer shall provide hospitalization, medical service coverage, and other health insurance benefits at a benefit level substantially comparable to or better than the existing coverage. There will be no increase in the employee contribution or reduction in coverage for this insurance.
 {¶ 9} The employer reserved the right to change carriers or terms so long as the coverage was substantially comparable to the existing coverage.
 {¶ 10} 4. Because the County Sheriff did not have authority under Ohio law to contract directly for health insurance, the County Commissioners entered the contracts for health insurance on the County Sheriff's behalf.
 {¶ 11} 5. The County Commissioners entered a contract for 2002 with Qual Choice, Inc., to provide health insurance to the County Sheriff's employees, under which the employees could choose between an HMO plan and a PPO plan.
 {¶ 12} 6. In October 2002, the Director of Administrative Services for Geauga County, Mary Elizabeth Vaughn, announced that, as of January 1, 2003, the County Commissioners would offer five health insurance options. Under each of these options, the employees' contributions were increased or their benefits were reduced, according to SERB's findings in a related administrative proceeding, described in paragraphs nine, 12, and 14 below. Vaughn explained that if employees did not choose from among the new plans offered, they would waive coverage.
 {¶ 13} 7. In December 2002, the Union filed a grievance against the County Sheriff with respect to the change in health benefits. The County Sheriff found the grievance to be meritorious but indicated that he lacked statutory authority to contract for health insurance and was therefore unable to enter an insurance contract that complied with the collective bargaining agreement.
 {¶ 14} 8. In January 2003, the new insurance options went into effect as announced.
 {¶ 15} 9. On March 24, 2003, the Union filed an unfair labor practice ("ULP") charge with SERB against the County Sheriff, alleging that the employer violated R.C. 4117.01(A)(1) and4117.01(A)(5) by unilaterally changing the health benefits.
 {¶ 16} 10. On March 24, 2003, the Union also filed a ULP charge against the County Commissioners, alleging that they violated R.C. 4117.01(A)(1) and 4117.01(A)(5).
 {¶ 17} 11. In May 2003, SERB dismissed the charge against the County Commissioners for lack of jurisdiction because the charge "does not allege a violation covered under Ohio Revised Code Chapter 4117, and the charge is not within the jurisdiction of SERB." In September 2003, SERB issued an order denying reconsideration.
 {¶ 18} 12. On December 30, 2003, a SERB administrative law judge issued a proposed order concluding that the County Sheriff had violated R.C. 4117.11(A)(1) and (A)(5) by failing to bargain over the effects of a new health care coverage and benefits program. The proposed order also included the following findings of fact and conclusions of law:
[Six] On October 11, 2002, the Commissioners announced changes in the health care plans effective January 1, 2003[.] * * * Regardless of the HMO or PPO plan chosen, in order to maintain the same level of health insurance coverage as an employee had before the change, the employee contribution increased substantially. The other HMO and PPO plan choices offered reduced levels of coverage and also in-volved an increase in the employee contribution. (Citations omitted.)
[Seven] The Union contacted the Sheriff regarding the Commissioners' announcement of mid-term health insurance changes. The Sheriff responded that he had no statutory authority to contract for health insurance, and therefore had no ability to prevent the changes to be made to the employees' health care coverage. The Sheriff did not offer to bargain with the Union over the health insurance changes. (Citations omitted.)
[Eight] The Union contacted the Commissioners and asked them to reconsider the health insurance changes. The Commissioners refused to consider the Union's request. (Citations omitted.)
[Nine] On January 1, 2003, the Commissioners implemented the announced changes to the employees' health care coverage without bargaining with the Union over either the changes themselves or the implementation of the changes. (Citations omitted.)
The administrative law judge found the County Sheriff was a "public employer" as defined by R.C. 4117.01(B) and that the County Commissioners constituted a "legislative body." The proposed order required the County Sheriff to return the employees to the status quo as it existed before January 1, 2003, including reimbursing employees for increased contributions and expenses incurred as a result of the changes in the health care benefits, and to bargain in good faith with the Union regarding the effects of the changes.
 {¶ 19} 13. The Union filed the present mandamus action, challenging SERB's dismissal in May 2003 of the charge against the County Commissioners for lack of jurisdiction. The Union named as respondents SERB and its individual board members. Subsequently, the Union voluntarily dismissed the individual board members as respondents.
 {¶ 20} 14. On March 17, 2004, SERB adopted the December 2003 proposed order against the County Sheriff.
Conclusions of Law:
 {¶ 21} In this action, the Union challenges SERB's determination that it did not have jurisdiction over the County Commissioners despite their role as the only entity that could contract for the public employees' health insurance and thus produce compliance or noncompliance with the collective bargaining agreement at issue. The Union seeks a writ that would compel SERB to adjudicate the charge against the County Commissioners on its merits.
 {¶ 22} The County Commissioners, having prevailed in the administrative proceedings, would have a strong interest in preserving SERB's decision and opposing the Union's challenge in mandamus. However, the Union did not name the County Commissioners as a party, and, therefore, the County Commissioners have not been given notice and an opportunity to be heard in this action.Under the Ohio Rules of Civil Procedure, a party is necessary for a just adjudication and must be joined where he has an interest in the subject matter and his absence impedes his ability to protect that interest. Civ.R. 19(A). Ordinarily, when the court is timely notified of the absence of a necessary party, the court simply orders that the party be added. Id.
 {¶ 23} Here, the potential prejudice to the County Commissioner is obvious: if this court were to issue a judgment that SERB has jurisdiction over the County Commissioners and must proceed to adjudicate the ULP charge against them, the County Commissioners would be obliged to defend themselves in administrative proceedings on the merits and would be subject to potential liability for an unfair labor practice. If this court were to reach such a decision in the absence of the County Commissioners as parties, their rights would have been determined by the court without notice and an opportunity to be heard, which is inconsistent with principles of due process. See State exrel. Cappella v. Indus. Comm. (July 22, 1999), Franklin App. No. 96AP-1220. Accordingly, the County Commissioners must be deemed an indispensable party or parties in this action pursuant to Civ.R. 19.
 {¶ 24} Where possible, courts should join an indispensable party rather than dismissing the action. See Civ.R. 19. However, in the present action, neither the Union nor SERB timely notified the court of the absence of a necessary party to the litigation. Further, the magistrate did not discern the absence of an indispensable party until engaged in drafting a decision after the oral hearing. Thus, the issue did not arise until after all the evidence had been filed and the case had been submitted for decision.
 {¶ 25} Due to the fact that all the evidence has been submitted and a hearing has been held, joinder of another party at this point is not feasible. Where joinder is not feasible and where the absent party is indispensable to the litigation, the court may dismiss the action without prejudice. See Civ.R. 19(B); see, also, Civ.R. 41(B)(4)(b) (stating that a dismissal for failure to join a necessary party is other than on the merits).
 {¶ 26} Here, the magistrate concludes that dismissal without prejudice would be appropriate, as the potential harm cannot be lessened by the shaping of relief in the judgment. See Civ.R. 19(B). Moreover, if the court were to issue a judgment in the absence of the County Commissioners, its judgment would be subject to challenge by the County Commissioners on the grounds that they were not given notice and an opportunity to be heard, and this court could be obliged to vacate its judgment entry and commence the proceedings anew with the County Commissioners as parties. See Cappella, supra.
 {¶ 27} Based on the foregoing, the magistrate recommends that this action be dismissed without prejudice under Civ.R. 19 for failure to join a party necessary for just adjudication.
 /s/P.A. Davidson
P.A. DAVIDSON MAGISTRATE